**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

E.F. and D.R. on behalf of their daughter, N.R.,

                Plaintiffs,

      - against -                       **COMPLAINT**

New York City Department of Education,

                Defendant.          1:11-cv-05243-GBD-FM

-----------------------------------------------------------------

        Plaintiffs E.F. and D.R., on behalf of their daughter N.R., by their attorneys, Mayerson & Associates, as and for their Complaint against defendant, the New York City Department of Education, allege and state the following:

    1.  Plaintiff N.R., the daughter of plaintiffs E.F. and D.R., is a minor child with autism going through the hormonal changes of puberty, who also presents with serious and dangerous behaviors.  N.R. was at all relevant times, and still is, a student residing within New York City who is entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400, *et seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

    2.  At all relevant times, plaintiffs have resided and continue to reside within the City of New York, within this judicial District.

    3.  Plaintiffs, though known to defendant, are not expressly named herein by their given names or specific address because of the privacy guarantees provided in the IDEIA statute, as

well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99. Upon the request of this Court, plaintiffs are prepared to disclose such information on an *in camera* basis.

4.  Defendant, upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the "local education agency" charged with the obligation to provide N.R. with a free and appropriate public education ("FAPE").

### THE RELIEF BEING SOUGHT

5.  This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et seq.*, more commonly known as the IDEIA and, in particular, 20 U.S.C. §§ 1415. See also 34 C.F.R. §§ 300.516, 300.517.  This action follows a fourteen (14) day trial that resulted in a hearing officer's decision, on the merits, in *plaintiffs'* favor.  This action also follows defendant's *unsuccessful* appeal of that decision to New York State's State Review Office. This action also follows defendant's unsuccessful November, 2010 interim appeal to the State Review Officer ("SRO"), attempting to evade defendant's statutory "pendency" obligations. Defendant's successive appeals to the SRO were each *dismissed* in their entirety and as a result, plaintiffs have amply achieved "prevailing party" status in multiple forums for purposes of the IDEIA's fee-shifting provision. As to this additional defense, defendant has only itself to blame for digging itself deeper and deeper into a hole as it sought to defend the indefensible.

6.  This action is being brought for two distinct purposes: (a) to seek modification of the State Review Officer's July 13, 2011 Decision No. 11-051 to properly reflect, on the merits, *all* the relief that the Impartial Hearing Officer had awarded in her April 12, 2011 Findings of Fact and Decision, and to restore the IHO's express finding and conclusion, based on the record and the IHO's credibility assessments, that defendant had engaged in "impermissible

predetermination" in the development of N.R.'s IEP and offer of placement and (b) to secure statutory attorneys' fees and costs that plaintiffs should be awarded in this action and in the underlying administrative proceedings as a "prevailing party" pursuant to the express fee-shifting provisions of the federal IDEIA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G).

### JURISDICTION AND VENUE

7.  This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in controversy.  Venue is proper in that plaintiffs and defendant reside in or are situated within this judicial district.

### FACTUAL BACKGROUND

8.  Pursuant to the IDEIA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a disability.  The FAPE required under IDEIA will be different for each child, as IDEIA does not permit a "one size fits all" approach.

9.  On or about July 1, 2010, plaintiffs initiated an administrative, due process proceeding against defendant in order to secure reimbursement and other relief based upon defendant's failure to provide N.R. with a FAPE for purposes of the 2010-2011 school year.  Plaintiffs sought, *inter alia*, tuition reimbursement at the not-for-profit Manhattan Children's Center ("MCC"), after school 1:1 ABA services, parent training and counseling, service coordination, and supplemental speech therapy.

10. After the appointment of a specially trained and highly experienced hearing officer, Jean Marie Brescia, Esq., defendant actually *contested* N.R.'s statutory pendency rights—rights that

by case law and statute, are supposed to be automatic and unconditional. As a result, evidentiary hearings proceeded on the pendency issue with live witnesses, and by decision dated September 28, 2010, the IHO expressly specified N.R.'s pendency rights, and held that defendant was obligated to honor those rights.

11.  Defendant, however, continued to contest the pendency issue, and on or about November 2, 2010, prosecuted an interlocutory appeal from the IHO's pendency decision to New York's State Review Office.

12.  By Decision dated December 23, 2010 (Decision No. 10-107), the State Review Officer dismissed defendant's appeal.

13.  Going to the merits, the parties then put on their respective cases during the course of 14 days of trial spanning a six-month period between August 9, 2010-February 14, 2011.

14.  The trial involved numerous witnesses, nearly 2000 pages of testimony (including expert witness testimony) and 40 exhibits.

15. After the parties had rested their respective cases, the hearing officer invited the parties to submit post-hearing briefs, and the parties did so.  In light of the length of the trial, the hearing officer granted the parties leave to submit briefs beyond the standard 30 page limit.  The parties exchanged their post-hearing submissions on April 1, 2011.

16. By a 65-page "Findings of Fact and Decision" dated April 12, 2011, Impartial Hearing Officer Jean Marie Brescia, Esq. rendered a reimbursement award in favor of N.R. based upon, *inter alia*, the following core findings that defendant had failed to provide N.R. with a FAPE:

- The 6:1:1 program that petitioner proposed for Natasha is "inadequate to address Natasha's unique and identified special educational needs.  Natasha manifests extreme behavioral challenges that are both self-injurious and aggressive and severely impact her learning."  IHO Dec., p. 53.

- "Natasha is also extremely distractible and requires constant prompting and reinforcement to participate in any learning related activity – as was observed by [petitioner]."  IHO Dec., p. 53-54.

- "Natasha also manifests significant cognitive and communication delays requiring repetition and reinforcement of material and intensive development of language skills."  IHO Dec., p. 54.

- Petitioner's proposed 6:1:1 program was "grossly inadequate to address Natasha's educational needs and to ensure her safety and the safety of her classmates and teachers."  IHO Dec., p. 54.

- To the extent that petitioner's IEP states that Natasha's behaviors "will be addressed programmatically," the "IEP is silent on the meaning of 'addressed programmatically' [and] this silence is of not benefit to Natasha  It constitutes the equivalent of a 'blank' on the IEP."  IHO Dec., p. 54-55.

- Petitioner's "Behavior Intervention Plan" strategies "are inadequate and would not result in Natasha being available for learning and would not ensure her safety nor the safety of her classmates and teachers.  The CSE was on clear notice of Natasha's extreme behaviors, the educational implications of those behaviors, and the strategies … used to address those behaviors."  IHO Dec., p. 55.

- "Even the Department's own expert witness, Dr. Ramaswamy, stated that this BIP was inappropriate.  The members of the CSE failed to accept the severity and dangerousness of Natasha's behaviors."  IHO Dec., p. 55.

- "At the May CSE meeting, all the educators who had worked with Natasha stressed … that Natasha needed after school services.  Mr. O'Sullivan noted … that the CSE rejected home based services for Natasha because she had made significant progress at MCC and with home based services … this combination should be continued rather than cut off.  Since the IEP does not include necessary after school services for Natasha, the program offered by the Department is inappropriate."  IHO Dec., p. 56.

- "Placement at P.S. 169 would not have been appropriate for N.R … The school does not include autistic students with behaviors as extreme as Natasha and staff does not have experience in addressing the needs of these types of students."  IHO Dec., p. 56.

- Ms. Klemm, the teacher at the proposed placement, testified that none of her students were self injurious or aggressive and that if a student were violent or needed to be restrained, then he or she "probably would not be in … this [P.S. 169] setting."  IHO Dec., p. 56; *see also* Tr. 1208.

- The admissions of Ms. Halpern (the Assistant Principal at the proposed placement) reflect that P.S. 169 staff would implement behavioral protocols not provided for in the BIP and would actually "reinforce Natasha's goals of avoiding doing work."  IHO Dec., p. 57.

- Ms. Klemm planned to employ strategies that might be useful for other students, but that would be "useless" with Natasha.  IHO Dec., p. 57.

- Retrospective testimony by Ms. Klemm or others as to what petitioner "would have done," is irrelevant unless reflected in the IEP.  IHO Dec., p. 57.

- "The KARMA school wide behavior plan and the … emotional literacy program would be inaccessible and meaningless to Natasha."  IHO Dec., p. 58.

- Natasha would be unable to engage in any of the work in Ms. Klemm's class. She would receive … only two 45-minute periods per day of one to one work with Ms. Klemm or a paraprofessional."  IHO Dec., p. 58.

- Natasha "would be incapable of understanding the class work."  IHO Dec., p. 58.

- Even Ms. Klemm admitted that none of her students had even 50 short term IEP objectives, and that Natasha's IEP called for over 120 short term objectives. Ms. Klemm also was unfamiliar with a key IEP term: "learn units."  IHO Dec., p. 58; *see also* Tr. 1153, 1157.

- "The 6:1:1 program at P.S. 169 would not provide Natasha with accessible opportunities for learning."  IHO Dec., p. 58.

- The IHO questioned how petitioner's site selection personnel could make an appropriate placement recommendation when such personnel did not even have a copy of Natasha's IEP and the information that they had on the District 75 referral form was inaccurate.  IHO Dec., p. 58.

- There was impermissible "predetermination" by petitioner because petitioner's IEP minutes reflect that it offered Natasha a 6:1:1 program because it "was the only program the DOE had."  District 75 does not have any classes with a one to one teaching ratio. *See* Tr. 1265.  "Since the CSE minutes reflect (and the testimony confirms) that after school services were not on the table … the Department's participants at the CSE meeting came into the room knowing that Natasha's IEP would not include such sevices." IHO Dec. p. 59.

- Ms. Rivera, petitioner's placement functionary, selected P.S. 169 for Natasha without knowing that "if Natasha were to attend P.S. 169 in July, she would

be assigned to a different class with a different teacher and classroom in September." IHO Dec. p. 41; Tr. 1487.

- Ms. Rivera selected P.S. 169 for Natasha without investigating "whether P.S. 169 would be able to provide the related services set forth on Natasha's IEP."[1] IHO Dec. p. 41; Tr. 1490.

17. At pages 64-65 of the IHO's April 12, 2011 Decision, the IHO directed defendant to reimburse plaintiffs for (a) tuition paid by plaintiffs to the not-for-profit Manhattan Children's Center ("MCC") for the 2010-2011 school year; (b) up to 20 hours per week of supplemental ABA therapy, (c) up to 3 hours per month of parent training and counseling (exclusive of all work performed on weekends and holidays), and (d) 3 hours per week of supplemental speech and language therapy, at specified hourly rates between $130 and $190 per hour. Based on N.R.'s unique severity and needs, and her interfering and dangerous behaviors, the IHO thus expressly validated the necessity and appropriateness of N.R.'s *combination* program then consisting of N.R.'s MCC school placement, *supplemented* by her after school ABA, speech and parent training and service coordination services.

18. Despite a compelling evidentiary record and detailed fact finding by the IHO, defendant elected to prosecute a full-blown appeal (on the merits) to the Office of State Review. Defendant's *second* appeal to the SRO (in the same case) necessarily forced plaintiffs to incur *additional* fees and expenses.

19. In a 30-page, single-spaced Decision dated July 13, 2011, the SRO *dismissed* defendant's appeal on the merits in its entirety.[2] The SRO directed defendant to reimburse plaintiffs for the MCC tuition. The SRO made no such express directive, however, as to N.R.'s supplemental

---

[1] While this was a classic Prong I burden on petitioner's shoulders, the evidentiary record reflected that petitioner was not nearly ready, willing and able to properly fulfill and discharge its own related services mandates at P.S. 169. *See*, *e.g.*, P-O.

[2] The SRO adopted most of the fact findings of the IHO. The SRO did, however, reject the IHO's finding that defendant had engaged in impermissible "predetermination." Plaintiffs urge that the hearing record (including defendant's own IEP minutes) *does* support that finding by the IHO and that, therefore, the SRO should have sustained that finding.

ABA, parent training and counseling, and speech therapy services, holding only that "I note that pursuant to the district's [statutory] obligation to provide student's *pendency* placement, there is no dispute that the parents are entitled to reimbursement [for the supplemental services]."

20.  The SRO, in contrast to what the IHO did, thus failed to make express findings on the *merits* as to the appropriateness, need, and reimbursability of N.R.'s supplemental services i.e. the need and appropriateness of N.R.'s combination program.  The SRO should have made or affirmed such a finding on the merits, just as the IHO did.

21. While the SRO adopted many of the fact findings of the IHO to rule in plaintiffs' favor and to dismiss defendant's appeal in its entirety, the SRO rejected an important finding made by the IHO based upon the evidentiary record and her assessment of the credibility of the witnesses; that defendant had engaged in "impermissible predetermination" in the development of N.R.'s IEP program.  The SRO should have affirmed that finding.

22. Plaintiffs have exhausted their administrative remedies.

### FIRST CLAIM FOR RELIEF

23. Plaintiffs repeat and reallege the allegations of paragraphs 1-22 as if fully recited herein.

24. While the SRO correctly dismissed defendant's appeal on the merits, the SRO erroneously failed to adjudicate, on the merits, the appropriateness, need, and reimbursability of N.R.'s combination program.

25. The SRO, who never heard or saw a single witness, erroneously and arbitrarily rejected the IHO's finding that defendant had engaged in "impermissible predetermination."

26. This Court should modify the SRO's Decision to adjudicate, on the merits, the appropriateness of N.R.'s combination educational program, and to restore the IHO's finding that defendant had engaged in impermissible predetermination.

**SECOND CLAIM FOR RELIEF**

27. Plaintiffs repeat and reallege the allegations of paragraphs 1-19 as if fully recited herein.

28. Both at the IHO and SRO levels, plaintiffs have emerged as a "substantially prevailing party."

29. Under the fee-shifting provisions of the IDEIA statute, plaintiffs should be awarded reasonable attorneys' fees and other recoverable costs at the IHO level, the SRO level (including *both* of defendant's unsuccessful appeals to the SRO), and in this action.

WHEREFORE, by reason of the foregoing, this Court should: (a) declare plaintiffs to be the substantially prevailing party; (b) modify the SRO's Decision and findings, as requested; (c) fix and award plaintiffs statutory attorneys' fees and related costs and disbursements from the IDEIA due process proceeding in an amount not less than $111,068.77; (d) fix and award plaintiffs' statutory attorneys' fees and related costs and disbursements from defendant's *two* unsuccessful appeals to the SRO in the additional sum of not less than $47,178.12, plus additional fees and interest as this Court may allow; (d) award plaintiffs the attorneys' fees and related filing costs and disbursements associated with this action in an amount to be set by the Court, and presently in the amount of approximately $3,500.00; and (e) award plaintiffs such other, different and further relief as this Court deems proper.

Dated: July 27, 2011            *s/ Gary S. Mayerson*
       New York, New York      _____
                                   Gary S. Mayerson (GSM 8413)
                                   Tracey Spencer Walsh (TW 2746)
                                   Mayerson & Associates
                                   330 West 38th Street, Suite 600
                                   New York, New York 10018
                                   (212) 265-7200
                                   (212) 265-1735 (facsimile)