```
                                               USDC SDNY
UNITED STATES DISTRICT COURT                   DOCUMENT
SOUTHERN DISTRICT OF NEW YORK                  ELECTRONICALLY FILED
-----------------------------------------------x   DOC #: _____
                                               DATE FILED:  11/8/12
E.F. and D.R. on behalf of their daughter, N.R., :
```

Plaintiffs,         :

      - against -               :      **REPORT AND**
                                              **RECOMMENDATION**
                                              **TO THE HONORABLE**
NEW YORK CITY DEPT. OF EDUCATION,    :      **GEORGE B. DANIELS**

Defendant.          :      11 Civ. 5243 (GBD) (FM)

-----------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    Introduction

        Plaintiffs E.F. and D.R. ("Plaintiffs"), represented by the law firm Mayerson & Associates ("Mayerson"), commenced this action under the Individuals with Disabilities Education Improvement Act (the "IDEIA"), 20 U.S.C. § 1400, et seq., on behalf of their autistic daughter, N.R. Having succeeded on the merits of the underlying administrative action, the Plaintiffs now seek to recover $163,465.77[1] in attorneys' fees and costs from defendant New York City Department of Education ("DOE") pursuant to the IDEIA's fee shifting provisions, 20 U.S.C. § 1415(i)(3)(B)-(G). These charges were

---

       [1]      There are minor discrepancies in the amounts of reimbursement sought by the Plaintiffs, likely caused by errors in calculation. In their original motion, the Plaintiffs requested amounts of $163,355.39, (see ECF No. 22 ("Pl.'s Mem.") at 7), and $163,463.77, (see id. at 15). In the Reply Affidavit of Gary S. Mayerson, the Plaintiffs request $163,355.39, (see ECF No. 35 ("Reply Aff.") ¶ 6), $163,735.77, (id. ¶ 15), and $163,465.77, (id. ¶ 38). Additionally, in the Affidavit of Gary S. Mayerson the Plaintiffs seek $163,464.77 in attorneys' fees and costs. (See ECF No. 17 ("Mayerson Aff.") ¶ 2). Of these sums, I have assumed that $163,465.77 is the amount of reimbursement Plaintiffs request, as it represents the actual amount reflected in the billing records submitted by the Plaintiffs. (See Mayerson Aff. Ex. N).

incurred in connection with Mayerson's representation of the Plaintiffs during (a) administrative proceedings before an Impartial Hearing Officer ("IHO"); (b) two appeals of the IHO's decision to the New York State Review Officer ("SRO"); and (c) this action. (See ECF No. 1 at 8; Mayerson Aff. ¶ 2; Reply Aff. ¶ 38).  For the reasons set forth below, I recommend that the motion be granted in part, and that E.F. and D.R. be awarded judgment against the DOE in the amount of $110,343.51.

II.     Relevant Procedural and Factual Background

On June 30, 2010, the Plaintiffs served a demand for a due process hearing under the IDEIA, seeking continued reimbursement of the costs associated with N.R.'s private school tuition, after-school services, and behavioral support for the 2010-2011 school year.  (Mayerson Aff. Ex. B).  On September 28, 2010, an IHO determined that N.R. was entitled to such services during the pendency of the due process hearing.  (Id. Ex. D).  The DOE appealed this pendency ruling to the SRO, but that appeal was dismissed on December 23, 2010.  (Id. Ex. E).  Thereafter, an administrative hearing on the merits occurred before the IHO over the course of fourteen days between August 9, 2010, and February 14, 2011.  (Mayerson Aff. ¶ 11).  The IHO rendered her decision on April 12, 2011, awarding the Plaintiffs $107,950 for the cost of N.R.'s 2010-2011 school year tuition, as well as reimbursement for additional services.  (Id. Ex. G).  The total amount of the award was $286,062.50.  (Mayerson Aff. ¶ 13).  Subsequently, the DOE appealed the IHO's award to the SRO.  (Id. ¶ 14).  That appeal was denied on July 13, 2011.  (Id. Ex. H).

The Plaintiffs commenced this action on July 28, 2011, and filed an amended complaint on September 7, 2011.  (See ECF Nos. 1, 5).  Thereafter, on February 1, 2012, Mayerson filed a motion for attorneys' fees.  In that motion, the Plaintiffs seek to recover a total of $163,465.77 in attorneys' fees and costs.[2]  (See ECF No. 16).  The DOE filed its opposition papers on April 16, 2012.  (See ECF Nos. 31, 32).  Mayerson filed its reply papers on May 15, 2012.  (See ECF No. 35).  The motion therefore is fully submitted.

III.  Discussion

   A.  General Principles

The purpose of the IDEIA is, inter alia, to "ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d).  In furtherance of that goal, a "court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  Courts have interpreted the IDEIA fee-shifting provisions in the same manner as the fee-

---

   [2]  As of February 1, 2012, the Plaintiffs had submitted billing records through January 12, 2012, reflecting a total bill of $163,465.77.  In his affidavit, filed on February 1, Mr. Mayerson indicated that the Plaintiffs "intend[ed] to submit the supplemental time charges of this motion at the time that [their] reply papers are filed."  (Mayerson Aff. ¶ 2 n. 2).  They have not submitted any documents reflecting charges incurred after January 12, 2012.  (See id. Ex. N).  Accordingly, the total attorneys' fees and costs for which the Plaintiffs seek reimbursement appears to be $163,465.77.

shifting provisions of other statutes.  A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 73 (2d Cir. 2005).

Accordingly, to determine the reasonable attorneys' fees and costs to which a prevailing party is entitled, a court must calculate the "presumptively reasonable fee," often referred to as the "lodestar."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections, 522 F.3d 182, 183, 189-90 (2d Cir. 2008).  The presumptively reasonable fee is calculated by multiplying the number of hours reasonably expended times the reasonable hourly rate.  See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); G.M. ex rel. R.F. v. New Britain Bd. of Educ., 173 F.3d 77, 84 (2d Cir. 1999).  The Supreme Court has cautioned that "a request for attorneys' fees should not result in a second major litigation" and that district court decisions awarding such fees should be "concise."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

In this case, there is no question that the Plaintiffs were the "prevailing party" for purposes of the IDEIA.  Indeed, the IHO awarded the Plaintiffs $286,062.50 in the underlying administrative proceeding, and the SRO dismissed both of the DOE's appeals.  (See Mayerson Aff. ¶ 2 & Exs. E, G, H).  The DOE nevertheless seeks to shave the amount that the Plaintiffs will recover, arguing that Mayerson's hourly rates are unreasonable and that the hours for which reimbursement is requested should be reduced for various reasons.  (See ECF No. 32 ("Def.'s Mem.") at 11-22).  I will address each of those issues in turn.

4

B.  Attorneys' Fees

1.  Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Thus, the issue is not what well-heeled clients might be willing to pay, but the "hourly rate at which a client who wished to pay no more than necessary would be willing" to compensate his attorneys for the services provided. Id. at 191. In assessing the reasonableness of the hourly rate charged, a court should consider the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). Additionally, the court may rely on its own knowledge of private firm hourly rates. Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987). Because a party is entitled to be compensated for the delay in payment, the appropriate rate to apply is counsel's current rate, rather than historical rates. A.R., 407 F.3d at 83; LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998). The fee applicant bears the burden of proving that the rate charged is in line with prevailing rates within the community. Blum, 465 U.S. at 895 n. 11.

Although a court "should generally use the prevailing hourly rate in the district where it sits," it "may adjust the base hourly rate to account for other case-specific variables." Arbor Hill, 522 F.3d at 184. These case-specific variables include twelve

factors set forth by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard, 489 U.S. 87 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430 n. 3 (citing Johnson, 488 F.2d at 717-19); see Arbor Hill, 522 F.3d at 186 n. 3 (citing the Johnson factors). A district court need not "recite and make separate findings as to all twelve Johnson factors," Lochren v. Cnty. of Suffolk, 344 Fed. Appx. 706, 709 (2d Cir. 2009), provided it "takes each into account in setting the attorneys' fee award," G.B. & L.B., ex rel. N.B. v. Tuxedo Union Free Sch. Dist., No. 09 Civ. 859 (KMK), 2012 WL 4108111, at *6 (S.D.N.Y. Sept. 18, 2012).

The Plaintiffs seek to recover fees for the work of eight Mayerson timekeepers at the following hourly rates: (a) $600 - $650 per hour for Gary S. Mayerson, the firm's founder;[3] (b) $295 per hour for "Ms. Dotts," an associate at Mayerson; (c) $275 per hour for "Ms. McGinley," another associate; (d) $250 per hour for "Ms. Wince," Mayerson's reimbursement specialist; (e) $250 per hour for Mary Cox, an attorney who

---

[3] Mr. Mayerson's hourly billing rate increased from $600 to $650 in June 2011. Additionally, Mr. Mayerson's travel time (totaling five hours) was billed at the rate of $300 per hour. (See Mayerson Aff. Ex. N).

assisted in the fee application; (f) $150 per hour for Mauricio Bertone, Mayerson's chief paralegal; and (g) $125 per hour for Roselyn Disla and Pebbles Quevedo, two other paralegals. (Mayerson Aff. ¶¶ 32-42 & Ex. N).[4] The DOE argues that the appropriate rates should be no more than $375 per hour for Mr. Mayerson, $175 per hour for Ms. Dotts, Ms. McGinley and Ms. Wince, and $150 per hour for Ms. Cox. (See Def.'s Mem. at 17-18).

    a.  Mr. Mayerson's Rate

The most highly compensated attorney for whom the Plaintiffs seek to recover fees is Mr. Mayerson, who served as the Plaintiffs' lead counsel. (Mayerson Aff. ¶¶ 22-32 & Exs. L, N). The Plaintiffs seek reimbursement for Mr. Mayerson's time at the rate of $600, and later, $650 per hour. (Id. ¶ 32 and Ex. N).

One of the most important factors in determining the prevailing market rate, and thus the reasonable hourly rate, is the amount that counsel actually charge their clients. See Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008); see also Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc., 246 F.3d 142, 151 (2d Cir. 2001) ("The actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded."). Here, the Plaintiffs evidently paid their bills in full, (see Mayerson Aff. ¶ 33), a factor which weighs in favor of finding that the billing rate charged was reasonable.

---

  [4]  Mayerson has not provided the first names of three of the timekeepers who worked on this IDEIA case.

There is no question, however, that the Plaintiffs could have found a capable attorney to represent them at rates lower than those charged by Mr. Mayerson. See K.F. ex rel. L.A. v. New York City Dep't of Educ., No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *4 (S.D.N.Y. Aug. 10, 2011) ("the conclusion that there is a shortage of willing attorneys to take on IDE[I]A cases is undercut by the existence of the fee-shifting provision and the number of attorneys who practice in this arena").  Indeed, several statements of attorneys not involved in this case that were submitted by Mayerson in support of its fee application confirm that there are skilled counsel who charge less—and sometimes considerably less—than Mr. Mayerson's hourly rate for similar services.  (See ECF Nos. 23-25).

Earlier this year, noting the hourly rate previously set by Judge Briccetti in a 2011 case, Judge Oetken determined that Mr. Mayerson's "reasonable hourly billing rate . . . is $415 per hour."  T.K. & S.K. ex rel. L.K. v. N.Y.C. Dep't of Educ., No. 11 Civ. 3964 (JPO), 2012 WL 1107660, at *5 (S.D.N.Y. March 30, 2012) (citing J.S. & S.S. ex rel. Z.S. v. Carmel Cent. Sch. Dist., No. 10 Civ. 8021 (VB), 2011 WL 3251801, at *6 (S.D.N.Y. July 26, 2011)); see also G.B. & L.B., 2012 WL 4108111 (S.D.N.Y. Sept. 18, 2012) (awarding $450 per hour for lead counsel); E.S. & M.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 430 (S.D.N.Y. 2011), aff'd, 2012 WL 2615366 (2d Cir. July 6, 2012) ("Although courts in this jurisdiction have awarded hourly rates exceeding $400 to attorneys in civil rights cases, such awards are only warranted in

'unusually difficult and complex' cases") (quoting Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007)).

The Plaintiffs concede that $600 or more per hour is at the very high end of the range of prevailing rates, but argue that several of the Johnson factors, including Mr. Mayerson's experience, the importance of this case, and the severity of N.R.'s autism, weigh in favor of adopting such rates. (Pl.'s Mem. at 12). Mr. Mayerson certainly is highly qualified in matters relating to the field of special education law. See T.K. & S.K., 2012 WL 1106550, at *5 ("Mr. Mayerson is a qualified attorney who has extensive experience in litigating IDE[I]A cases"). It also appears that he specializes in cases involving autistic children. (See ECF No. 25 (Decl. of Andrew K. Cuddy, Esq., dated Apr. 15, 2011) ¶ 11; Mayerson Aff. ¶¶ 22-26, 29, 30 & Ex. L). His expertise thus weighs in favor of awarding him a fee at the higher end of the prevailing market rate range.

On the other hand, the legal and factual issues in this case are not as complex as those that were faced by counsel in L.V. v. N.Y.C. Dep't of Educ., 700 F. Supp. 2d 510 (S.D.N.Y. 2010), an IDEIA case cited by the Plaintiffs in support of their motion. That case was a class action suit, "alleging systemic violations of state and federal statutes and federal constitutional law," which involved "a substantial amount of discovery" and "statistical analysis." Id. at 515. Finding that the case was "much more complex than the ordinary single-plaintiff lawsuit," the court awarded lead counsel a $600 hourly rate. Id. Although the parties in L.V. settled, and thus did not have to go through the hearings and appeals that the Plaintiffs in this action endured, that is not

9

necessarily determinative of the complexity of a case.  See J.S. & S.S., 2011 WL 3251801, at *5 ("Although the administrative process in this action was long and drawn out, it does not necessarily follow that it was complex and required extremely experienced counsel.  Counsel will be compensated for the amount of time spent in hearings not through an increased hourly billing rate, but through a greater number of hours billed.").

Moreover, "the size and caliber of the firm in question have a significant bearing on what rates are charged."  Rodriguez ex rel. Kelly v. McLoughlin, 84 F. Supp. 2d 417, 421 (S.D.N.Y. 1999).  For that reason, a "movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead."  Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 875, 895 (S.D.N.Y. 1994), aff'd, 60 F.3d 956 (2d Cir. 1995).  "[A]lthough [a] large firm's higher overhead should not be a basis for automatically increasing the rate," "courts may look to rates charged by firms that are similarly situated, including the rates of firms that are comparably sized."  L.V., 700 F. Supp. 2d at 517-18 (internal quotation marks omitted).  Here, despite its conceded experience in the field, Mayerson is significantly smaller, and thus arguably has less overhead, than the firms in several cases cited by the Plaintiffs.  See, e.g., id. at 518-19 (awarding $600 per hour to partners at Milbank, Tweed, Hadley & McCloy LLP, in IDEIA class action); Rozell, 576 F. Supp. 2d at 544-46 (awarding rate of $600 per hour to partners at Outten & Golden in a Title VII employment discrimination suit).

But if the rate sought by Mayerson is unreasonably high, the $375 per hour rate urged by the DOE is also unacceptably low. In support of this rate, the DOE argues, inter alia, that the Plaintiffs' fees should be reduced because their case "did not involve important legal issues . . ., nor did it serve discernable and substantial public purposes, nor was there an award of injunctive relief that carried systemic effect." (Def.'s Mem. at 16). In each of the cases that the DOE cites in support of its contention, the plaintiffs recovered only nominal or de minimis damages. See Farrar v. Hobby, 506 U.S. 103 (1992) (nominal damages of one dollar on claim for seventeen million dollars); Carroll v. Blinken, 105 F.3d 79 (2d Cir. 1997) (damages award of only one dollar in Title VII sexual harassment claim); Sowemimo v. D.A.O.R. Security, Inc., No. 97 Civ. 1083 (RLC), 2000 WL 890229 (S.D.N.Y. June 30, 2000) (damages award of only six thousand dollars despite two million dollars sought at trial). In contrast, the Plaintiffs in this case were awarded nearly $300,000. Moreover, courts have held that "the 'degree of success' is 'the most critical factor' in determining the reasonable fees to be awarded to a prevailing party." T.K. & S.K., at *6 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008)). Here, of course, the Plaintiffs obtained nearly all the relief they sought. (See Mayerson Aff. Ex. G at 6, 64).

In light of Mr. Mayerson's significant experience, the rates recently awarded in this District to Mr. Mayerson and other special education attorneys, the

11

Johnson factors, and the record as a whole, I find that $475 is a reasonable hourly rate for Mr. Mayerson.[5]

                b.      <u>Rates of Other Attorneys and Paralegals</u>

The DOE argues that the rates charged for Ms. Dotts, Ms. McGinley, Ms. Cox, and Ms. Wince are unreasonable and should fall within the $125 - $200 range. (See Def.'s Mem. at 17-18). In <u>J.S. & S.S.</u>, after observing that "[f]irst-and second-year associates practicing before this Court at small firms have typically been awarded fees in the $125 - $200 range," Judge Briccetti awarded $175 per hour for Ms. Dott's time and $150 per hour for Ms. Cox's time. <u>J.S. & S.S.</u>, 2011 WL 3251801, at *6. The DOE urges that the Court award Ms. Dotts and Ms. Cox the same rates awarded in that case, but that opinion was issued over a year ago. Ms. Dotts and Ms. Cox graduated from law school in 2008 and 2009, respectively. (Mayerson Aff. Ex. L). Accordingly, they are now fourth and fifth year associates. Ms. Wince served as Mayerson's Reimbursement Specialist on N.R.'s case, and her resume indicates that she has been an associate at Mayerson for more than four years. (Mayerson Aff. Ex. L). All three associates additionally were performing work on a case pending in the Manhattan courthouse, not the White Plains courthouse as in <u>J.S. and S.S.</u> See <u>Maceira v. Pagan</u>, 698 F.2d 38, 40 (1st Cir.1983) ("If a local attorney could perform the service, a well-informed private client, paying his own

---

      [5]      Based on this rate, Mr. Mayerson's travel time should be reimbursed at the rate of $237.50 per hour. See <u>Barfield v. N.Y.C. Health & Hosp. Corp.</u>, No. 05 Civ. 6319 (JSR), 2006 WL 2356152, at *2 (S.D.N.Y. Aug. 11, 2006) (noting that it is "customary" in this District to reimburse travel time at one-half the usual billing rate).

fees, would probably hire local counsel at the local, average rate."). Westchester County rates presumably are lower than Manhattan rates.

While "courts have awarded amounts ranging from $125 to $200 per hour for attorneys with less than three years experience," Torres v. City of New York, No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *2 (S.D.N.Y. Feb. 14, 2008), all three Mayerson associates have at least three years of experience. Furthermore, a fee award should be commensurate with current rates. A.R., 407 F.3d at 83. Taking into account the fee awards in recent cases, the Johnson factors, and the record as a whole, I find that the reasonable billing rate for Ms. Dotts is $225 per hour, and that the reasonable billing rate for Ms. Cox and Ms. Wince is $200 per hour. With respect to Ms. McGinley, who only graduated from law school in December 2009, and thus has less than three years of experience, a reasonable billing rate is $175 per hour. Finally, the Plaintiffs' requested billing rates of $150 per hour for Mr. Bertone, and $125 per hour for the work of the other paralegals are reasonable. See Tatum v. City of New York, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) ($125 per hour is a reasonable paralegal rate); Hnot v. Willis Group Holdings Ltd., No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008) ($150 per hour is reasonable for paralegals in this District).

   2. <u>Hours Reasonably Expended</u>

Having assessed the reasonableness of Mayerson's hourly rates, I turn to the reasonableness of the hours expended by the Plaintiffs' attorneys. To enable a court to

determine the reasonableness of the hours expended, a party seeking an award of attorneys' fees must submit contemporaneous time records indicating the number of hours expended and the nature of the work done.  See Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); Puglisi v. Underhill Park Taxpayer Ass'n, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).  In keeping with this requirement, Mayerson has furnished the Court with its time records related to the underlying administrative proceeding and this action.  (See Mayerson Aff. Ex. N).  Those time records reflect a total of approximately 297 hours billed by Mayerson, including approximately 245 hours attributable to Mr. Mayerson, twenty-nine hours attributable to Ms. Dotts, and eighteen hours attributable to Ms. Wince.  (Mayerson Aff. Ex. N; ECF No. 31 (Decl. of Ass't Corp. Counsel Thaddeus Hackworth) ("Hackworth Decl.")) Ex. 1).

        The DOE contends that the total number of hours claimed by the Plaintiffs should be reduced for several reasons.  First, the DOE alleges that N.R.'s case was staffed inappropriately because nearly eighty-three percent of the 297 hours spent on this matter was billed by Mr. Mayerson, rather than more junior attorneys who could have performed tasks at a less expensive rate.  (Def.'s Mem. at 18-19).  Out of approximately seventy-five hours that the DOE claims were improperly staffed, nearly forty-five appear to relate to Mr. Mayerson's participation in (and travel to) the administrative hearing.  (See Mayerson Aff. Ex. N; Hackworth Decl. Ex. 1).  More than half of the remaining thirty hours arise out of Mr. Mayerson's preparation on days prior to hearing dates.  (See id.).

14

Certainly, it is neither unexpected, nor inappropriate, that the lead attorney on a matter attend the hearing and engage in some pre-hearing preparation. Nevertheless, certain tasks performed by Mr. Mayerson clearly could have been completed by junior associates for less expense, such as summarizing the evidence and testimony and performing Google searches. (See Mayerson Aff. Ex. N at 6, 9). Although Mr. Mayerson may have had greater familiarity with this case than his associates, (see Reply Aff. ¶ 19), this does not justify his high billing rate for such ministerial tasks. Accordingly, a reduction in the number of hours billed by Mr. Mayerson is warranted.

The DOE also contends that excessive hours were spent drafting a forty-page brief for the IHO hearing and a subsequent memorandum of law for the SRO. (Def.'s Mem. at 21-22). I find that the hours billed for drafting the post-hearing brief and memorandum to the SRO were excessive, particularly given that Mr. Mayerson, who billed more than twenty-five hours for drafting the SRO memorandum, (see Mayerson Aff. Ex. N), could have delegated this task, at least initially, to a more junior associate.

The DOE argues that the total number of hours expended also should be reduced because many of the billing entries are vague and the Plaintiffs' counsel spent unnecessary time drafting the complaint presented to this Court. (Def.'s Mem. at 19-22). With respect to the billing entries, counsel are required to record the tasks they perform, but they need not do so in excruciating detail. See Hensley, 461 U.S. at 437 n. 12 (counsel need not "record in great detail how each minute of [their] time was expended"); L.V., 700 F. Supp. 2d at 524 ("It is not necessary to report the 'exact number of minutes

spent on each activity.'") (quoting McDow v. Rosado, 657 F. Supp. 2d 463, 467 (S.D.N.Y. 2009)). I find that Mayerson's time entries are, in fact, sufficiently detailed, and that a reduction for vague entries therefore is not appropriate. A reduction in hours similarly is not warranted for the time Mayerson spent drafting the complaint in this fee action. See G.M., 173 F.3d at 84 ("Included in the award should be not only the time spent on the administrative proceeding, but the time expended on this suit (including this appeal) as well"); L.V. at 527 ("Because plaintiffs prevailed, they are entitled to fees on their application.").

In sum, a reduction in hours is warranted solely for certain of Mayerson's staffing decisions and the time devoted to drafting the post-hearing brief and memorandum to the SRO. In reducing the total number of hours awarded, a "district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." McDonald ex rel. Prendergrast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006). In this case, I find that a fifteen percent reduction in the hours billed by Mr. Mayerson is appropriate. See Spalluto v. Trump Intern. Hotel & Tower, No. 04 Civ. 7497 (RJS) (HBP), 2008 WL 4525372, at *8 (S.D.N.Y. Oct. 2, 2008) (adopting a "15% across-the-board reduction" of particular attorneys' hours "to account for excessive billing"); Winkler v. Metro. Life Ins. Co., No. 03 Civ. 9656 (SAS), 2006 WL 2347826, at *2 (S.D.N.Y. Aug. 10, 2006) (reducing lodestar figure by twenty percent for "excessive charges and lack of delegation").

C. <u>Reasonable Costs and Expenses</u>

In addition to the attorneys' fees, the Plaintiffs also are entitled to reimbursement for the reasonable costs and expenses associated with the underlying litigation and this fee action. See <u>Marisol A. ex rel. Forbes v. Giuliani</u>, 111 F. Supp. 2d 381, 401 (S.D.N.Y. 2000) ("It is well-settled that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.") (internal quotations omitted). The Plaintiffs seek to recover such costs and expenses in the amount of $1,375.38. The DOE does not appear to challenge this aspect of the Plaintiffs' application, which is reasonable and should be granted.

D. <u>Amounts to be Awarded</u>

After making the adjustments set forth above, Mayerson is entitled to fees totaling $108,968.13, as reflected in the following table.

| **Timekeeper** | **Rate** | **Hours** | **Reasonable Fee** |
|---|---:|---:|---:|
| Mayerson | $475.00 | 203.575 | $96,698.13 |
| Mayerson (travel) | 237.50 | 5.000 | 1,187.50 |
| Dotts | 225.00 | 29.000 | 6,525.00 |
| Cox | 200.00 | 2.000 | 400.00 |
| Wince | 200.00 | 18.400 | 3,680.00 |
| McGinley | 175.00 | .700 | 122.50 |
| Bertone | 150.00 | .700 | 105.00 |
| Paralegals | 125.00 | 2.000 | 250.00 |
| | | **Total** | **$108,968.13** |

(See Mayerson Aff. Ex. N). In addition, Mayerson is entitled to costs and expenses in the amount of $1,375.38. The total that Mayerson should therefore recover is $110,343.51.

IV. Conclusion

For the reasons set forth above, the Plaintiffs' motion should be granted in part, and the Court should award the Plaintiffs $110,343.51.

Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:   New York, New York
         November 8, 2012

_____
FRANK MAAS
United States Magistrate Judge

TS

Copies to All Counsel via ECF